May it please the Court, Ben Thorpe on behalf of Appellants, the Georgia NAACP, and Common Cause. The District Court erred in granting Secretary Kemp's motion to dismiss, and in our view the procedural posture of this case is highly relevant. Let me ask you this right up front, just to get to the heart of it. The Supreme Court of the United States has granted certiorari in Husted the Sixth Circuit case, which is the only case out there that's dealt with these two federal laws. When I look at the question they granted certiorari on, it seems to me, although the case is a the same question we've got to decide in this case. Seems to me we could do two things with this case. One is we could simply vacate the judgment, send it back to the District Court and say, you wait until the Supreme Court rules in Husted, and then if the Supreme Court affirms Husted, I think you win. If the Supreme Court reverses Husted, I think you lose. And also the District Court never considered the First Amendment question, which to me is a very significant question, and that is, does a person have a federal constitutional right not to vote? Seems to me from a common sense standpoint, if you have a federal constitutional right to vote, you would have a federal constitutional right not to vote, but the District Judge never addressed that question. Why shouldn't we send this case lock, stock, and barrel back down for the District Court to take a fresh look at this after the Supreme Court rules in Husted? For two reasons, Your Honor, though several of the points that you just made are included in our presentation today. The first is that this is an ongoing practice, that the State suspended while this was pending in the District Court, but has reengaged in while this case has gone on appeal. As they informed this Court when moving to hold this in abeyance pending the resolution of the Husted case, they indicated list maintenance has continued to happen, meaning that more voters are purged as a result of what we argue is an illegal practice. Do you agree Husted, however, they decide that's going to control the outcome of this case? Controls the statutory question for certain. Husted does not raise the First Amendment issue that is raised here, so were Husted to be reversed, the First Amendment question would remain pending. Obviously, we agree with you that the District Court did not address the question of whether there was a right not to vote, but instead assumed a right not to vote, and in our view reached factual determinations about the reasonability of the burden placed on that right. You know, it's also interesting to me in this case, usually my experience has been, I've been a federal judge 34 years, the Supreme Court likes to kind of wait, let these things, they use the term, percolate in the circuits, there's just this one decision. The reason I think they granted review in this case is you've got a lot of States that have a law very similar to Georgia's, so this is a very important question, and it just makes sense to me, let's wait and see what the Supreme Court does. I agree with you, Your Honor, that it is an exceptionally important question, but the reason it is, is because it implicates the right of so many people to vote in the federal statutes that are designed to protect that right. There is no question that the purpose of the NVRA, when initially passed, was to increase the number of eligible voters that would end up registered and having the opportunity to vote. Yeah, but there are provisions in there that allows, as in the case of Section 234 in Georgia, where they can implement certain things, and the Georgia law, it doesn't appear to me to have ever been the attempt to keep people from voting if they wanted to vote, but all they had to do was follow the rules. In other words, if your driver's license expires and you've been notified that it has expired, you have an obligation to go and get a driver's license or you don't get one. That's correct, Your Honor, and in our view, the NVRA includes, among those rules, a restriction on what the States can allow, and that restriction is that they can't remove people as a trigger mechanism by virtue of their failure to vote, and that is what this statute . . . But in Georgia, the trigger mechanism is the fact that they didn't vote. First, there's a three-year part, as I understand it, then they get a notice, and then even if they don't respond to the notice, they still have two more years to possibly do it. That is correct, Your Honor. At what point can you say that these people have either moved, died, or something else has happened? Why are we keeping them on the rolls? Well, we don't view, and there is no evidence on this record that indicates that non-voting is any sort of proxy for change of address, and even if it were, we think that there is an explicit prohibition in the NVRA on using it for that purpose. Fifty percent of the people in this country don't vote anyway. That's correct, and the opportunity to vote in the future is unquestionably constitutionally protected. All parties agree to that. The question is whether the federal statute and or the First Amendment preserves that right even in the absence of someone exercising it regularly, and we think that's on the plain language of the NVRA. That is Section B-2. It requires states that are going to adopt these kinds of laws for list maintenance to maintain procedures that are uniform, that are non-discriminatory, and that shall not result in the removal of the name of any person from the official list by reason of their failure to vote. So what should the Georgia statute say in order to comply with the First Amendment and the national statute? What should it say? To comply with the First Amendment, the most important distinction is that it not draw a distinction between voters and nonvoters for the purpose of list maintenance. It distinguishes people based on viewpoint by that function. For the purposes of the NVRA, it merely needs to be a reasonable effort as part of a general program to identify people that have moved on the basis of the national statute. And so how do you do that? The only way you do it is to use the Postal Service as safe harbor? We do not believe that's the only way you do it. The USPS safe harbor is an example that the plain text of the statute says may be used. What would be another constitutionally permissible way to do it? Well, there are others that Georgia, in fact, already uses. All of the Department of Driver Services coordination with the Secretary of State, the use of different forms of public assistance, the any number of ways that the State is informed about change of address actually have some indicia of reliability as to why change of address is a reason that person has become an ineligible voter. We think that the determination, and the NVRA supports this, that the determination that failure to vote triggers that is prescribed both by statute and the Constitution. The other issue that is sort of critical to the briefing in this case is that the State has argued that the HAVA amendments from 2002 sanction this practice. In our view, it's completely the opposite. What the HAVA amendments make clear as an exception is the use on the back end of non-voting after notice as confirmation that a change of address has occurred in relation to some reasonable effort to determine that change of address has occurred that moved someone from the active to inactive voter list. To use failure to vote as the reason to move them from the active to the inactive list remains proscribed by the NVRA, and HAVA did not change that. But in any event, the Supreme Court is going to decide that specific issue for us, right? It will, though when it does is an open question, and the Georgia elections are — They've already heard arguments. That's correct. We could get a decision any day now. We could, though arguments were heard in January and no January decisions have yet been released. And so, just to follow up on what Judge Dabena was asking you, why shouldn't we wait and risk the possibility of an inconsistent decision? Because of the rights that this case implicates. The 2018 elections in Georgia are underway. People will vote on May 24th in general and — I'm sorry, May 22nd — in general and someone that has been purged and does not know that they have been purged may show up and be unable to cast a ballot. And that is irreparable harm, no question, under settled law that we believe this Court has the capacity to remedy and should remedy by reversing the district court decision. Even if this Court chooses not to reach the statutory question, the First Amendment should be reached in the sense that the district court committed several errors in performing its First Amendment analysis. The first was pointed out by Judge Dabena. There is no analysis of the plaintiff's claim that there is a right not to vote, that it is a corollary of the right to vote that is so clearly protected under settled law. Cases like Reynolds v. Sims, Westbury v. Sanders all make clear that participation in the political process through how one chooses to vote is an essential piece of democracy that is preservative of all other rights. Has any court anywhere ever answered that question? I don't believe that there is a federal court that has determined that there is a federal right not to vote under the federal constitution. The Supreme Court of the United States has decided — I forget the name of the case, didn't they — say you have a constitutional right not to associate with someone or a particular group or so forth. So there are cases in a different context where they've said you have a federal constitutional right not to whatever. But I couldn't find any federal case anywhere that's decided this way. There is no question the Supreme Court has not held the right not to vote is a federally protected right as articulated by the plaintiffs here. But the cases that you just cited are highly relevant to plaintiffs' claim. Hurley is the Boston Parade case, the Boy Scouts case from 2000 — from the early 2000s all make clear that how we choose to associate with others politically cannot be compelled by State action. And that reflects a very common principle in First Amendment law, which is it's not just what we choose to say. It's what we don't want to be drawn into saying. The National Libertarian Party filed a brief in the Husted case that makes precisely this argument, that there's political value in the speech that says, I want to be a registered voter. I want to be counted. But I want that — my non-voting to express my frustration with the candidates that actually end up on the ballot. Anything that puts the thumb on the scales and says we're going to choose to penalize people that don't exercise that right is discriminatory, and that thus violates the First Amendment. All right. Thank you, Mr. Thorpe. We'll hear from Mr. Hite. Good morning, Your Honors, and may it please the Court. I am Josiah Hite, an assistant attorney general here on behalf of Secretary of State Brian Kemp. What's your position on what I posed as a possible disposition of this case? That is, we simply vacate the judgment here, send this case back down, let the district court hold it until the Supreme Court of the United States rules in Husted, at the same time direct the district court to address the First Amendment question, and let the district court have a second look at it in the first instance. Why shouldn't we do that? Well, Your Honor, I agree entirely with you that this case, the statutory question will be decided by the Supreme Court, which is why do we move to hold this case in abeyance, pending outcome of the Husted case? On the First Amendment question, the reason why— I'm not talking about holding it in abeyance. I'm talking about sending it back down. I like to give district judges the first shot at things. Let the district judge look at what the Supreme Court says in Husted. Well, the outcome of the Husted case will only affect the statutory question because the First Amendment has not been raised there. So on the issue of the First Amendment, that's really what the district court would have to attack post the outcome of the Husted case. And we argue that on the First Amendment claim, they've not made out any sort of viable claim for the right that they're asserting. And that's the reason why we believe the case should be heard here if the court decides, as you did previously, to not hold the case in abeyance pending the outcome of Husted. And I'd just like to note, all of the bills that the appellants have identified with the upcoming election and folks who may have been taken off the rolls, they had the opportunity, they were invited by this court, in fact, to move in the district court for a preliminary injunction to forestall the application of Section 234. Why couldn't they still do that if we send this case back? They have. They just have declined that opportunity. I'm saying why couldn't they do it if we send this case back down? They very well could. They wouldn't be, they would be permitted to move for that injunction at that point in time. A preliminary injunction, what would that accomplish if there are voters, a significant number of voters who've already been removed from the voter registration rolls? How would that work? Well, depending on how they frame the injunction, they could ask the state or ask the court to require the state to put them back on. Exactly. Because the state keeps track of those voters who have gone through the address confirmation procedure, those voters who have moved to the inactive list because they don't respond to the address confirmation postcard, and then those voters who have also been removed. We keep track of all that. So it would just be a process of putting them back on. But to return to Judge Zubino's question about why we shouldn't just send this back, on the statutory question, absolutely, the Supreme Court's going to decide that. But on the First Amendment question, the rights that are being asserted by Plaintiffs are not really the rights that they've stated here today. They say that there is this right not to vote that is the mirror image of the right to vote. But what they're really asserting is the right not to vote and then remain on the registration list. Section 234 says nothing about voting, doesn't require someone to vote or not vote. All it says is that we are going to comply with the NBRA's requirement that states maintain accurate registration roles. And we're going to do that through this process of inquiring as to whether individuals have had contact with the state over the course of three years. And then after that contact, if there is no contact, we will send them the address confirmation postcard that's required for any address, change of address program under the NBRA. We believe not only has no federal court addressed the asserted right not to vote, what they're really asserting is the right not to vote and to remain on the registration roles. And the district court was well within reason to argue or to analyze that right. And under its analysis, even though it was in the alternative and even though it was an issue of whether the right exists, the district court clearly found that Section 234 wouldn't burden such a right. And it did that under a number of different standards. There have been a couple of different standards advanced by the appellants. We have put forward a number of different standards. And the reason for the different standards being put forward is because no court has addressed this. But we would argue if what's at issue is the right not to vote and to remain on the registration roles, that's really a classic forum-based analysis. Appellants are seeking to express their displeasure with the slate of candidates through not voting by remaining on the registration list. The registration list itself is the forum through which they're seeking to express themselves, essentially. And because the registration list has never been designated by the state as any sort of forum for public expression or for the assertment of any First Amendment rights on behalf of the public, it's a non-public forum. And because it's a non-public forum, any regulation of speech through that forum, the only standard it needs to meet is whether the regulation is reasonable and viewpoint neutral. This is clearly a viewpoint neutral regulation. It's not— I have a question. Yes, sir. We're all discussing the Supreme Court's consideration of the Sixth Circuit decision on a similar case. And while I agree with some of my colleagues that there is—it's not on all fours, but the general outcome is pretty much the same. I'd like you to comment on the fact in the Sixth Circuit in Ohio, their trigger has to do with not voting. And the state of Georgia, your trigger is not compliance with the state—with Section 234 of the Georgia law. Would you care to comment on that? Absolutely. And I think that's— I mean, is that a sufficient distinguishment so that we can get a little bit more confused than we already are and talk about what we do procedurally with this case? I think that is an important distinction. I'm not sure that it's a distinction that will make a difference on how the Supreme Court comes out, but we're not exactly sure how that decision will read. There are a couple of differences between Ohio's statute and Georgia's. The first is the one that you identified. Under Ohio's statute, the trigger for sending the address confirmation postcard is lack of voter activity. Under Georgia's statute, it's lack of contact for three years with election officials, which could include notification of some sort of change in your status. It can include signing a petition for getting something on the ballot, whether it's a candidate or some other type of ballot issue. And it can include not signing a voter certification card, which you would sign when you go to vote. But in addition, the Georgia statute looks back three years, which necessarily covers a presidential election. Ohio's statute only looks back two years. And I think that coverage of non-voter activity in the Ohio statute is important as it relates to Georgia's statute. Because going back to the 1990s, when Georgia was first implementing Section 234 in response to the MVRA, we initially included or had non-voter activity as our trigger. That went to the Department of Justice for clearance under Section 5. The Department of Justice sent it back saying that was problematic for its analysis under Section 5. Georgia legislature went back and rewrote the statute and passed a new one that went into effect in 1997. That's the current language. And that current language was pre-cleared by Section 5. Now, of course, Section 5 pre-clearance isn't necessarily determinative of whether the statute evaluates the MVRA. But the Department of Justice, in its initial determination of our initial statute, specifically tied its denial to the fact that we explicitly included voter activity. And then we changed that in response. So to answer your question, yes, there are some significant differences between the Ohio statute and Georgia statute. Well, I wouldn't describe them significant, but there are differences. You know, in all these cases, we always look to see if case A can be distinguished from case B, then we might want to look at see which way it ought to go. Well, I think on the issue here and the issue that's before the Supreme Court, if they come down on the statutory interpretation question, as presented by the challengers in Ohio and by the appellants here, that the failure to vote clause in Section 8B.2 of the MVRA prohibits a state from considering failure to vote data at all unless the state goes through both the permissive notice of change of address program and the address confirmation postcard. This is their position. If the state does not go through both of those programs, it cannot consider failure to vote data at all. If the Supreme Court comes out and says, yes, that's the proper interpretation of the failure to vote clause, then I agree with Judges Dabena and Wilson that our statute likely will fall along with Ohio's. But we would argue that that's not the proper interpretation, and we don't believe that that's the way the Supreme Court will come out. And there's a couple problems with that interpretation. First and foremost, it turns the permissive notice of change of address provision into a required provision. Second, appellants admit that there are other possible triggers or other possible programs that a state could use other than the permissive notice of change of address program for sussing out change of address. However, if the state was to have some other program that didn't have failure to vote as a trigger, such as comparing the registration list to juror rolls or even canvassing every single voter in the state, the state would then still be required to go through the address confirmation procedure, because that procedure is a requirement for any change of address program. At that stage, under the address confirmation procedure, the state has to consider failure to vote data. So under appellant's reading, the state would have an alternative program that didn't have failure to vote as its trigger, but it would still consider failure to vote and not use the permissive structure in the notice of change of address program. In other words, failure to vote would still be a but-for cause of someone's removal, but it wouldn't be the trigger. That's why we think that reading is just incompatible with the plain language of the statute, which is exactly what the district court found. The only reading that is compatible with the fact that a state has to have some sort of program to ensure the accuracy of their lists based on someone's change of address, that the notice of change of address program is explicitly permissive, but a state must consider failure to vote at the address confirmation stage, and the fact that the statute is completely silent as to what can trigger the address confirmation statute, or the address confirmation procedure. It's clear that the proper reading of the failure to vote clause is the one that the district court found, that failure to vote cannot be the reason that someone is removed. And this is confirmed by the contemporaneously passed HAVA statute. Now, HAVA is just, in terms of the MVRA, it's just a clarification amendment to the failure to vote clause. It adds that, except that language, to 8b2. But the HAVA itself contains a provision about list maintenance for change of address in which it says, change of address program shall not result in someone being removed solely by reason of their failure to vote. And that solely language, while not explicitly inserted into the MVRA, absolutely can be read in conjunction with the MVRA, because we know that HAVA was passed in part in response to problems that came up in the 1990s after the MVRA was passed. This is with the Department of Justice taking the position that states could not consider failure to vote data at all unless they were going through both the permissive notice of change of address program and the address confirmation procedure. We know that HAVA was in response to that. That's why we have the clarification amendment. I'd just like to turn, with the final few minutes, back to the First Amendment question, unless your honors have any further questions on the statutory interpretation issue. On the First Amendment, appellants now argue that the district court applied a rational basis level of review. It very clearly did not. On appellant's invitation, it looked at the O'Brien four-part test, and the O'Brien four-part test has only been applied to the voting arena in the Hoffman v. Maryland case, which the appellant cited to both at the district court and here on appeal. And in Hoffman, the Fourth Circuit said that the four-part test in O'Brien has later been construed by the Supreme Court to really be nothing more than an application of the time, place, and manner restrictions applicable to public forums and designated public forums, which is why we turn back to the right that's being asserted here. It's the right not to vote and to remain on the forum of the registration list. So we would argue that while at the district court here, we've said that a forum-based analysis is the proper analysis for the court, and under that analysis, this is a non-public forum, therefore the lower reasonable test applies, what the district court really did and what the Hoffman court did is apply the more stringent standard for public forums. So if the statute would survive that, it certainly would survive the lower level of review that we say is proper here. Now, the appellant's argument that this was some sort of rational basis review is just not supported by the district court's opinion. The district court clearly found that there's a significant interest here and that there are reasonable avenues, alternative avenues for expression. Section 234 says nothing about disallowing voters from going out and expressing their All it does is regulate the remaining on the registration list based on the amount of time that you've not had any contact. If we didn't apply a rational basis and applied strict scrutiny, would the outcome be the same? Well, I don't believe that strict scrutiny should apply here because there's no allegation in the complaint that there's some sort of viewpoint discrimination. They argue that we treat voters and non-voters differently, but the NVRA treats voters and non-voters differently. And there's no, there's no attempt to curtail the voter's expression. Their, the idea that they're expressing themselves through non-voting. We're not doing anything to curtail that. So strict scrutiny, I don't think should apply here. Only immediate, intermediate level of scrutiny should apply. And with that. Is the right to vote a fundamental right? The right to vote absolutely is a fundamental right, but that's not what it's issued. It's the right not to vote and to remain on the registration list. All right. Thank you. Thank you, Mr. Hite. We'll hear again from Mr. Thorpe. Thank you, Your Honor. And I certainly understand the panel's impulse to discuss waiting for the Supreme Court to decide the Husted case. Because the right to vote is a fundamental right and because of the operation of this statute, we would urge this Court to act now in reversing rather than vacating the district court opinion in this case. If we decide to send it back and let the district court decide the case after the Supreme Court makes its decision in Husted versus A. Philip Randolph, could you still move for a preliminary injunction in time for the next election that would require, if you prevailed, require the Secretary of State to those voters who were removed back on the voter registration rolls in the state of Georgia? Two answers, Your Honor. First, that depends, unfortunately, entirely on when the Supreme Court chooses to decide the Husted case. So if they decided at the end of term, there will be both general and primary elections that occur before that time at which persons may choose to vote who have been removed from the voter rolls. Second, we don't really understand the mechanics of which voters have been removed as a function of this provision because of the way the — Well, they say they can identify them pretty easily. And we hope they can do so speedily and return them to the electors' list as quickly as possible. What the second thing I was going to say is we would ask this Court in its order, if it were to send it back to the district court, to indicate what a preliminary injunction would require. And your question of the State, Judge Wilson, is precisely the important part of that. It's not just suspending the practice currently. It is actually restoring voters to the rolls and doing so with sufficient time that the registrars have the opportunity to have updated election lists that cover all of those voters and possibly notify those voters that they are back on election rolls. As an illustration of the operation of this statute and the number, the hundreds of thousands of voters, it likely affects. If somebody chose to vote in 2008, did not do so in 2010 or 2012, they received a notice. And if they did not respond to that notice and did not vote in 2014 or 2016, they are now purged. Those are the voters that need to be restored their voting rights under this statute. The second point I want to make, and I understand the impulse to wait on the statutory question, is that the State, frankly, misstates our position as to when failure to vote or whether failure to vote can ever be used. The HAVA amendment, it is clear, allows the nonvoting on the back end as part of this confirmation procedure that is required in all contexts where you have made a determination that somebody has changed address, including the USPS. That does not allow it as a trigger on the front end, which is still prohibited by B-2. Thank you. Thank you, counsel. And court will be in recess until 9 o'clock tomorrow morning.